IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**FILED**

FEB 0 1 2013

| IN THE MATTER OF THE SEARCH OF | Case No. $13 - m j - 7002$ |
| THE CELLULAR TELEPHONE ASSIGNED | |
| CALL NUMBER **331-454-4661** | **Filed Under Seal** |

STEPHEN C. WILLIAMS
U.S. MAGISTRATE JUDGE
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS OFFICE

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Michael Rehg, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.    I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **(331)-454-4661** ("**TARGET TELEPHONE #1**"), whose service provider is **Sprint/Nextel**, a wireless telephone service provider headquartered at 6480 Sprint Parkway, Overland Park, Kansas.   The subscriber information for **TARGET TELEPHONE #1** is currently unknown, but **TARGET TELEPHONE #1** is believed to be used by FNU LNU a.k.a Big Homey.   **TARGET TELEPHONE #1** is further described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.    I am a Special Agent currently assigned to the DEA Fairview Heights Resident Office. I have been a Special Agent with DEA for approximately 14 years, and prior to that I was a Deputy United States Marshals Service for approximately nine (9) years.   I have participated in numerous drug investigations, which have resulted in the seizure of heroin, methamphetamine, crystal methamphetamine, ecstasy, cocaine, marijuana, and other controlled substances. I am familiar with and have utilized  normal methods of investigation, including, but not limited to, visual surveillance, questioning of witnesses, the use of search and arrest warrants,

the use of informants, the use of pen registers, the utilization of undercover agents and the use of court-authorized wire intercepts.

3.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, witnesses, and Confidential Sources (referred to as CS's). This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.     Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841(a)(1) and 846 (the "TARGET OFFENSES") have been committed, are being committed, and will be committed by **FNU LNU a.k.a. Big Homey** the user of **TARGET TELEPHONE #1**, and other known and unknown persons.   There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses.

## PROBABLE CAUSE

5.     For the reasons set out in this affidavit, there is probable cause to believe that the TARGET OFFENSES have been committed, are being committed, and will continue to be committed by FNU LNU a.k.a. Big Homey and others known and unknown in this cocaine /heroin Drug Trafficking Organization (DTO).  Further, there is probable cause to believe that Big Homey is a cocaine/heroin source of supply (SOS) who resides in the East St. Louis, Illinois area.  It is believed that Big Homey is obtaining heroin/cocaine from an unknown SOS possibly in Chicago, IL.    Big Homey is distributing the cocaine/heroin from a business named, "Distinctive Details Carwash" located at 8000 State Street, East St. Louis, Illinois. Furthermore, while conducting these activities and distributing cocaine/heroin, it is believed that Big Homey is utilizing **TARGET TELEPHONE #1** to commit the TARGET OFFENSES.

2

6.     This application is submitted in connection with a cocaine/heroin trafficking organization targeting Big Homey and others, a cocaine/ heroin trafficking organization based in the East St. Louis area. Based on information provided by confidential source #1, agents believe Big Homey to be a large-scale cocaine/heroin trafficker in the East St. Louis area.

7.     In January of 2013, SA Michael Rehg and FBI SA Richard Box met with a confidential source (CS#1) regarding the drug trafficking activities of Troy Edwards. Information provided by CS#1 in the past has led to multiple arrests, the seizure of $33,500 USC, the seizure of 20 ounces of heroin, and the indictment of multiple defendants. In addition, information provided by CS#1 in other investigations has been corroborated by other sources of information. Based on this, it is believed the information provided by CS#1 is reliable.

9.     According to CS#1, he/she knows Troy Edwards a.k.a. Booney is a distributor of cocaine/heroin/marijuana in the East St. Louis area. CS#1 stated Edwards acts as a "Middle-Man" orchestrating drug deals between customers and sources of supply. According to CS#1, Edwards is capable of providing customers with cocaine, marijuana and heroin. CS#1 stated that Edwards utilizes cellular telephone 314-452-4968 to contact drug customers and his SOS.

10.     On January 25, 2013, at approximately 12:00 p.m., agents from the FHRO met with CS#1 concerning the drug trafficking activities of EDWARDS. According to CS#1, he/she had the ability to purchase both cocaine and heroin from EDWARDS.

11.     On this same date, at approximately 12:01 p.m., agents directed CS#1 to call EDWARDS on his cellular telephone 314-452-4968. EDWARDS did not answer the call, however he called the CS back at approximately 12:15 p.m. and they agreed to meet in St. Louis, MO . This call was recorded by agents and phone records verified that the call was from 314-452-4968.

12.     At approximately 12:54 p.m., SA Box and SA Rehg searched CS#1 and his/her vehicle for contraband. This search was met with negative results. CS#1 was then equipped with

3

electronic recording equipment and $7,500.00 of recorded U.S.C. Federal Bureau of Investigation OAF and instructed to meet with EDWARDS to purchase cocaine and heroin. CS#1 departed the area en route to meet with EDWARDS while SA Box and SA Rehg followed behind.

13.     At approximately 1:19 p.m., CS#1 picked up Edwards at an apartment along with an unidentified black male, known by CS#1 as "Lil D." CS#1 told Edwards he/she wanted to purchase 3 ounces of cocaine and an ounce of heroin.

14.     At approximately 1:25 p.m., CS#1 stated Edwards telephoned his SOS regarding the drug transaction. CS#1 stated Edwards indicated he wanted to purchase 3 ounces of cocaine. From electronic recording devices, SA Rehg could also overhear Edwards' side of the conversation between him and his unknown source of supply, in which Edwards indicated at he wanted three ounces of cocaine. Tolls records for Edwards' cellular telephone identified this call and reflected an outgoing call to 331-454-4661 (**TARGET TELEPHONE#1**) at 1:26 p.m.

15.     At approximately 2:03 p.m., CS#1, Edwards, and "Lil D" arrived at 8000 State Street, East St. Louis, Illinois 62203.  At approximately 2:15 p.m. TFO Neal Rohlfing observed a dark skinned black male approximately 6'2" tall and weighing 225 lbs., approach CS#1's vehicle on the passenger side.  TFO Rohlfing observed Edwards exit the vehicle and have a conversation with the unidentified black male.  TFO Rohlfing observed Edwards and the unidentified black male, identified by CS#1 as "Big Homey" walk behind the building at 8000 State Street, East St. Louis, Illinois.

16.     At approximately 2:17 p.m., TFO Rohlfing observed Edwards and the Big Homey return from behind the building and get into a black vehicle with Illinois license plate number P32 8300. TFO Rohlfing observed Edwards exit the black vehicle and returned to CS#1's car. Once in CS#1's car, Edwards delivered 3 ounces of cocaine and 1 ounce of heroin to CS#1. In total CS#1 provided Edwards with $7,150 for both the cocaine and heroin so that he

4

could pay Big Homey. TFO Rohlfing observed Edwards return to the black vehicle momentarily before returning to the CS' car. TFO Rohlfing then observed CS#1, Edwards and "Lil D" leave 8000 State Street, East St. Louis, Illinois, in CS#1's vehicle. A short time later, CS#1 dropped Edwards and Lil D at a residence in East St. Louis. This meeting was audio/video recorded by agents.

17.     At approximately 2:56 p.m., CS#1 met with SA Box and SA Rehg at a pre-arranged meet location where they immediately took possession of the heroin, cocaine and all electronic recording equipment. TFO Chad Nord field tested the suspected cocaine and heroin and it tested positive. SA Box and SA Bamvakais searched CS#1 and his/her vehicle for contraband. This search was met with negative results.

18.     On January 30, 2013, CS#1 stated he/she met with Edwards and spoke about future drug transactions with Big Homey. CS#1 stated he/she wanted to speak directly to Big Homey concerning prices of heroin. Edwards indicated that Big Homey was out of the area, possibly orchestrating a drug transaction. Edwards has boasted that Big Homey obtains large quantities of heroin and cocaine. Edwards told CS#1 he had sold large amounts of cocaine for Big Homey. From January 11, 2013 to January 28, 2013, toll records from Edwards' telephone indicated 63 contacts between him and Big Homey at **TARGET TELEPHONE #1.**

19.     Based on the information provided by CS#1, it is believed that Edwards and Big Homey will continue in their drug trafficking efforts. It is anticipated that Big Homey will continue to use **TARGET TELEPHONE #1** to further the violations of 21 USC 841 and 846.

20.     In my training and experience, I have learned that **Sprint/Nextel** is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and

5

(2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

21.     Based on my training and experience, I know that **Sprint/Nextel** can collect E-911 Phase II data about the location of **TARGET TELEPHONE #1**, by initiating a signal to determine the location of **TARGET TELEPHONE #1** on **Sprint/Nextel**'s network or with such other reference points as may be reasonably available.

22.     Based on my training and experience, I know that **Sprint/Nextel** can collect cell-site data about **TARGET TELEPHONE #1**.

## AUTHORIZATION REQUEST

23.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

24.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of **TARGET TELEPHONE #1** would seriously jeopardize the ongoing investigation, as such a

6

disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

25.     I further request that the Court direct **Sprint/Nextel** to disclose to the government any information described in Attachment B that is within the possession, custody, or control of **Sprint/Nextel**. I also request that the Court direct **Sprint/Nextel** to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with **Sprint/Nextel's** services, including by initiating a signal to determine the location of **TARGET TELEPHONE #1** on **Sprint/Nextel's** network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.     The government shall reasonably compensate **Sprint/Nextel** for reasonable expenses incurred in furnishing such facilities or assistance.

26.     I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate **TARGET TELEPHONE #1** outside of daytime hours.

27.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of

the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

Michael Rehg
Special Agent
Drug Enforcement Administration


Subscribed and sworn to before me on February 1, 2013.

STEPHEN C. WILLIAMS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF ILLINOIS

8

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number **(331)-454-4661, ("TARGET TELEPHONE #1"),** whose wireless service provider is **Sprint/Nextel** a company headquartered at **6480 Sprint Parkway, Overland Park, Kansas 66251.**

2. Information about the location of **TARGET TELEPHONE #1** that is within the possession, custody, or control of **Sprint/Nextel,** including information about the location of the cellular telephone if it is subsequently assigned a different call number.

## ATTACHMENT B

### Particular Things to be Seized

All information about the location of **TARGET TELEPHONE #1** described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of "**TARGET TELEPHONE #1**" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of **Sprint/Nextel**, **Sprint/Nextel** is required to disclose the Location Information to the government. In addition, **Sprint/Nextel** must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with **Sprint/Nextel's** services, including by initiating a signal to determine the location of **TARGET TELEPHONE #1** on **Sprint/Nextel's** network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate **Sprint/Nextel** for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).